FRANCIS ARKERSON *vs.* GEORGE W. DENNISON.

Middlesex.   Jan. 14. — March 27, 1875.   AMES & ENDICOTT, JJ., absent.

In an action by a workman against his employer, for personal injuries caused by the fall of a staging upon which the plaintiff was at work repairing a building, the evidence tended to show that the plaintiff went on to the staging by the defendant's direction; that the staging was insecure in consequence of being constructed of unsuitable materials, or by neglect to fasten it together sufficiently; that the staging was built before the plaintiff began work, by persons who were afterwards his fellow workmen; and that the defendant directed what lumber was to be used therefor. It was not contended that the staging was built under the direct personal supervision of the defendant, but there was evidence that he superintended the work generally. *Held,* that a jury would be warranted in finding a verdict for the plaintiff.

TORT for personal injuries caused by the fall of a staging upon which the plaintiff was at work in the employment of the defendant.   Trial in this court, before *Ames,* J., who, after verdict, reported the case for the consideration of the full court, in substance as follows :

The plaintiff testified : " In July, 1873, I was employed by the defendant, as a bricklayer, to work by the day on a building in Cambridgeport.   He set me to work on the third story on the west side, filling up the inside brickwork, and directed me, when I had finished that side, to go over to the east side to do the same work there, on a staging already built.   Having finished on the west side, I, in accordance with these directions, went on July 22 to the east side, through a third story window, upon the staging there erected, and went to work laying bricks.   Went out this way because the ladder from the outside had not yet been put up. The defendant was there on the ground about the building, giving directions generally about the work.   Soon after a ladder was put up, and I called for mortar.   The hod-carrier brought some up, and emptied it into the tub.   He then turned to go down, when there was a crash, and the scaffold broke and fell, and Ben-

nett, who was at work with me, the hod-carrier and I were thrown to the ground. I was stunned and very badly hurt, my leg being broken. I had no part in building this staging, which was built before I began to work for the defendant. I did not examine it at all before going on it, as I supposed that it was safe, and could not have examined it unless I had taken up the boards. It was about thirty-two feet high. I saw nothing to show that it was unsafe. When it fell, there was not over the weight of ten bricks upon it, and part of two tubs of mortar, besides Bennett, the hod-carrier and myself. The ledger board, which is a board nailed to the outer posts, and running parallel with the building, used as a support for the cross-boards, on which the planks rest, had broken in two. This ledger was cross-grained, and had split with the grain. It was much too small and thin for such a place. The staging was about twenty-one feet long." *Cross-examined :* " After I fell, looked up and saw ledger broken. The hod-carrier brought but a small hod full, and put it down easy. A man standing on the ground and looking up could not tell, on account of the distance, whether it was safe or not. A mason generally takes it for granted that the staging is safe, and if he tried to examine, he would be apt to be discharged by his employer."

George Dudley, a carpenter, testified for the plaintiff : " I saw Arkerson after the fall ; helped put him into the wagon. I looked up at the staging, and saw the ledger broken in two. The ledger was nailed on the outside of the posts, and when this gave way it let the whole staging down. It was built of spruce or hemlock, six or eight inches wide ; split ragged across ; should not consider the scaffold safe to go on it myself." *Cross-examined :* " I think a nail gave way. If the hod-carrier had thrown the mortar down violently, it might have started the nails. I only examined it from the ground."

Albert Rollins, a mason and bricklayer, testified for the plaintiff : " I have built stagings ; saw posts standing and ledger .broken. It was cross-grained. Split aslant, one and a half to two feet from the middle. I should not think the ledger was a proper one to be put up. A staging ought to be able to hold from one to three tons, and ought to hold even if the hod-carrier dumped the mortar down violently. The lumber here was spruce

or hemlock. This kind of lumber, exposed to the weather, readily splits with the grain. It was not a safe staging." *Cross-examined :* "Any one coming up the ladder could see that it was unsafe, but not if they came from the third floor window."

Patrick Mehan, for the defendant, testified as follows : " I am a bricklayer, and always assisted in building stagings. Employed by the defendant as a bricklayer. Helped construct this staging about two weeks before it fell. Two of us worked on it, and brought materials up from the ground. Materials as good as the average, perhaps better. Nails were good. There was sufficient material for the ledger. While we were raising the staging, a heavy shower came up. One of the ledgers was not nailed as well as we intended, and we did not go back to nail it. Worked on the staging, don't know how long before the fall. Bennett was with me. Did n't tell the defendant of insecurity of ledger. We fixed the ledgers according to our own judgment. Have been accustomed to build stagings according to my own judgment." *Cross-examined :* " I worked by the day, while building the staging. The defendant was there almost every, if not every day. There was no regular boss. Presume the defendant superintended the work. I did n't, though I was paid more than others. The defendant told us what lumber to use. Ledger was spruce. Saw it after it was broken, split off. It was not cross-grained. It split off with the grain. We did n't nail the middle boards, intending to return. Afterwards went on the staging, and took out window-caps, without having finished it. I did not examine it to see if it was safe. I had forgotten that I had left it unsafe. Intended to make it safe by driving in more nails. Can't say how many nails we used. No weight came on the ledger. They were put on simply to keep the poles steady."

Wilder Bennett, for the defendant, testified : " Have been bricklayer for fifty years. Have built a great many stagings ; helped build this about three weeks before the accident. Interrupted in the building by a storm. I thought staging was finished. Mehan did the nailing, while I brought up boards. After the staging was built, I worked on the caps. Mehan and two or three others helped me. Stood on the staging while doing it. Arkerson, the morning of the fall, nailed the board from a pole to the window-frame, to keep it steady. Staging looked sound.

Nothing said about the staging, and I saw no trouble with it. We put on extra plank. Chambers did some nailing. He took the nails and hammer, and said he nailed it. Saw hod-carrier come up and step on the stage. Heard him dump the mortar; he did it pretty quick." *Cross-examined:* " In this work the defendant gave me directions, though he gave me none the morning of the fall. Fixed the staging when I went on the east side. Shifted the ladder. Don't know whether the ladder was fixed this morning. Handed nail to Chambers half an hour before the accident, to fix the staging. When I left the staging three weeks before, I thought it was finished. No agreement between Mehan and me as to who should go back and nail it. No weight on the ledger; it was all on the cross-pieces. It was not cross-grained, but was fine spruce board, capable of holding half a ton. Think it did n't break. Took lumber up. Mehan gave me directions as to selection of lumber. One side of it was brown by exposure to rain and sun. Think dumping the mortar caused the break."

Patrick Chambers, for the defendant, testified : " I worked in this building as hod-carrier. Saw there were not nails enough in the centre of the staging. Plaintiff was on it. Saw Arkerson nail a piece of board to the upright post. There was no trouble with the boards, but they were not sufficiently nailed. I put some nails in that morning." *Cross-examined:* " Put nails in about nine o'clock. Arkerson went on the stage about that time. Saw the staging was not safe when I first went up. Helped Bennett put on planks."

T. C. Mansfields, bricklayer, for the defendant, testified : " Saw the staging at time of accident ; have built stagings. Noticed the material ; no trouble with it; lumber was sound. Staging was good if the nailing had been proper."

It was not contended that the staging was built under the immediate direct personal supervision of the defendant. At this point in the trial the judge said that the burden was upon the plaintiff to show that the defendant did not exercise ordinary and reasonable care in the selection and employment of competent and suitable men, and in furnishing suitable lumber to build the staging.

The plaintiff contended that there was evidence tending to show that the staging was in fact unsafe, and that the defendant

knew, or ought to have known, that this staging was unsafe ; that the defendant was bound to furnish a safe and proper staging for the plaintiff to work on ; that if the defendant directed the plaintiff to work upon this staging, it was his bounden duty to see that it was safe ; and that there was evidence of the defendant's negligence. The judge ruled that upon the evidence the plaintiff could not maintain the action, and ordered a verdict for the defendant.

Judgment was to be entered for the defendant, if in the opinion of the court the action could not be maintained upon the evidence reported ; otherwise, the case to stand for trial.

*J. B. Richardson*, for the plaintiff.

*J. W. Hammond*, for the defendant.

WELLS, J. The plaintiff was injured by the falling of a staging, upon which he was directed to go by the defendant, for the prosecution of the work for which he was employed. The staging had been erected before the plaintiff entered the employment of the defendant. The evidence tended to show that it was improperly constructed, and insecure, either by reason of unsuitable material used, or by reason of neglect to fasten it together sufficiently by nailing, or for both or other reasons. That it was insecure and improperly constructed in some way, was sufficiently apparent from the account given of the manner of its fall.

The plaintiff contended that " the defendant was bound to furnish a safe and proper staging for the plaintiff to work on ; " that " the defendant knew, or ought to have known, that this staging was unsafe ; " and that " there was evidence of the defendant's negligence " in this respect. The court restricted the plaintiff's right of recovery to the ground of negligence " in the selection and employment of competent and suitable men and in furnishing suitable lumber to build the staging." In this, as well as in the ruling that the plaintiff could not maintain the action upon the evidence, we are of opinion that there was error.

The positions of the plaintiff were founded upon the law, applicable to the relations which a workman sustains to his employer and to his fellow workmen, as settled by the judicial decisions of this Commonwealth. *Gilman* v. *Eastern Railroad*, 10 Allen, 233; 13 Allen, 433. *Snow* v. *Housatonic Railroad*, 8 Allen, 441. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. *Huddleston*

v. *Lowell Machine Shop*, 106 Mass. 282.    *Ford* v. *Fitchburg Rail-road*, 110 Mass. 240.

On the one hand, the workman takes upon himself the risks ordinarily incident to the employment he engages in ; and those include the results of negligence on the part of others employed in the same service.   On the other hand, " the master is bound to use ordinary care in providing suitable structures and engines and proper servants to carry on his business, and is liable " for any negligence in this respect.   " If he knows, or in the exercise of due care might have known, that his servants are incompetent or his structures or engines insufficient, either at the time of pro-curing them, or at any subsequent time, he fails in his duty." *Gilman* v. *Eastern Railroad*, 13 Allen, 440.

Whether a particular structure or appliance is one for which the master is responsible to his servant may depend upon cir-cumstances, including the nature and scope of the employment of those engaged in its preparation and use.   It may depend upon the question whether the direction and charge of the work is con-fided to the workmen or some of them, or retained by the em-ployer or left unprovided for.   If the employer directs his work-men to do certain work, leaving it to them to provide the struct-ures and appliances required for its prosecution, he may be responsible only for care in selection of the men and material assigned for it.   But if he simply employs them to work under his direction, giving them no charge or responsibility in regard to the result to be accomplished, or the appliances to be used, that responsibility remains with him.   The negligence of fellow workmen, for which the master is held to be exempt from respon-sibility, is negligence in respect to that which the workmen undertook or were set to do.   When the preparation of the ap-pliances is neither intrusted to nor assumed by them, the master may be held guilty of negligence, if defective appliances are fur-nished, even though the workmen themselves are employed in the preparation of them.   In such case, negligence appearing, it is a question of fact for the jury whether that negligence was in respect of what was done or undertaken by the fellow-workmen, or was the negligence of the master.

The ruling at the trial would not permit the presentation of the case in this aspect.   The defendant's witness, Mehan, in cross-

examination, testified : " I worked by the day, while building the staging.   The defendant was there almost every, if not every day.   There was no regular boss.   Presume the defendant super-intended the work.   I did n't, though I was paid more than oth-ers."   The other two persons who worked upon the staging did not appear to have any charge of the work.   It would have been competent for the jury to find that the defendant had not in-trusted the preparation of the staging to any one else, and there-fore that he retained the charge and direction of it himself, and was bound to exercise some degree of care in regard to it, which he neglected to do.   The statement of the report, that " it was not contended that the staging was built under the immediate direct personal supervision of the defendant," is consistent with neglect on his part to exercise that supervision which, under the circumstances, he ought to have done, and for which, if the jury should find that it was culpable neglect, he might be held liable to the plaintiff.   We think this was a question of fact which should have been submitted to the jury ; as was also the question whether the defendant knew or ought to have known, because, if he had exercised due care, he would have known, that the staging was unsafe.   The case must therefore stand for trial.

*Verdict set aside.*