CATHERINE BOYLE, administratrix, *vs.* ALBERT E. MOWRY
& another.

Middlesex. Jan. 9. — March 5, 1877. COLT & AMES, JJ., absent.

In an action for personal injuries sustained in falling through a platform in the defendant's foundry, a witness, who testified that the injured person, as they were going to his house in a hack, said that a fellow workman was to blame for his injuries, but who did not testify as to the condition of the platform, was asked, on cross-examination, whether he did not state in the presence of others, after he helped the injured man into the house, "that the platform had not been safe for six weeks previously." *Held,* that the evidence was rightly excluded.

In an action for personal injuries, sustained in falling through a platform in the defendant's foundry, on the ground that the defendant had built it negligently or knew it to be unsafe, testimony of the defendant, that he had no knowledge or information that the platform was defective or unsafe, is admissible.

TORT for injuries occasioned to Daniel Boyle, the plaintiff's intestate, by falling through a platform in the defendants' foundry and the overturning upon him of the contents of a crucible of molten brass.

At the trial in the Superior Court, before *Brigham,* C. J., the plaintiff offered evidence tending to prove that the defendants were the proprietors of a brass foundry in Boston, where they carried on the business of casting metals; that the plaintiff's intestate was in their employ in the capacity of a melter; that in front of nine furnaces in the foundry, and over an ash pit, was a platform twenty feet long, constructed of planks about four feet long, twelve inches wide and three inches thick, laid with one end resting in the hollow or concave portion of a common iron rail such as is used on steam railroads, and the other end resting on a piece of joist with another joist back of and raised above it for the planks to rest against, and forming a frame to the pit; that the planks were only laid in and were not fastened down, but were kept in place by fitting in the hollow of the rail at one end and the frame or raised joist at the other; that they were taken up once a week to remove the ashes from the pit; that the platform was about on a level with the floor of the foundry, and the ash pit beneath it was about four feet four inches deep; that from the heat of the furnaces or the hot ashes raked out from beneath them into the pit or their subsequent removal, the wood of some of the planks had lost its vitality and

was worn off at the ends, so that they became shortened, and wedges were driven between the ends and the joist forming the frame to crowd the other ends into and against the hollow of the rail and prevent them from slipping; that these wedges were furnished by the defendant Mowry, who ordered them to be made and to be used, and who was in the foundry a number of times daily and superintended the labor there; that the business of the plaintiff's intestate required him to go upon the platform and to assist the moulders in taking out the crucibles of molten metal, in carrying them across the platform and in depositing them in an iron pan on the floor of the foundry at the other side, also that he should daily go beneath the platform to build the fires, rake out the ashes, and, as occasion required, to take up and put down the planks of the platform; that on January 5, 1874, while the plaintiff's intestate was assisting one O'Neil, a fellow workman and a moulder, in taking a crucible of molten brass from one of the furnaces, each having hold of the tongs which held the crucible, one of the planks of the platform upon which he was standing slipped out from the iron rail and fell into the pit, causing him to fall through, and the crucible to pour its contents upon him, burning him so severely that he survived his injuries but eleven days; and that the plank which fell through was afterwards measured by the defendants' foreman and found to be one and five eighths inches short, and that when one end was pressed up against the joist or frame, the other end would slip by the rail and down into the pit, but if pressed against the rail would keep its place in the platform.

The defendants, to show that the plaintiff's intestate did not impute his injury to their fault or to any defect in the platform, introduced as a witness one Lynch, who was in their employ at the time of the trial and at the time of the accident, and who testified as follows: "After the accident I accompanied Boyle in the hack from the foundry to his house. I had talk with Boyle in the hack; he said O'Neil was the cause of his being burned. He cursed O'Neil, said he hoped the devil would burn him in hell for he caused him to be burned. I told him not to say so, for O'Neil was himself burned. I tried to pacify him and keep the blanket on him and keep him warm." On cross-examination he testified: "I helped him into his house. I did not say

to him O'Neil was not to blame. I only said that he ought not to say so, for O'Neil was burned too." For the purpose of contradicting the witness in what he represented that Boyle said to him, and that he did not say to Boyle that O'Neil was not to blame, and also that he made no other statement to Boyle in the hack, and also as a part of the same conversation, the plaintiff asked the question "whether he (Lynch) did not say to Boyle, after he had helped him into the house from the hack and in the presence of Mrs. Boyle and one Miss Elliot, that the platform had not been safe for six weeks previously," which question was objected to by the defendants and not permitted to be answered by the judge, who excluded all conversation which took place between Lynch and Boyle, or Mrs. Boyle and Miss Elliot, in the presence and hearing of all after Lynch and Boyle had left the hack. No question was put by either party as to the platform or his knowledge of it.

Against the plaintiff's objection, the defendant Mowry was allowed to testify as follows : " At the time of the accident I had no knowledge or information that the platform was defective or unsafe. I was in the foundry ten or twelve times a day. I always made it a point to see that things were right, and if the men were doing their duty. I almost always went on the platform, never under it. I have been there when planks were taken up. I never saw or was informed that planks were too short. The foreman was instructed by me, not by Phillips, who is seldom there. He (Phillips) has no charge of the men, consults with me about mixing the metal. I have always told the foreman to take care, and also Boyle to take care of everything in his department. This was not often, but when there was occasion for it. I have worked mechanically, in metals principally, for twenty-five years. I am a practical moulder but not a practical melter. I was familiar with the construction of the platform. I devised it. There is a brace in the centre of the rail. I know the strength of iron. That bar of iron would not spring without a pressure of twenty tons. I have seen three thousand pounds on it. The rail was an entire piece of twenty feet." The other defendant, Enos B. Phillips, was allowed, against the objection of the plaintiff, to testify : " I had no

knowledge, information or belief that the platform was defective either in construction, material or condition."

No exceptions were taken to the instructions to the jury. The jury returned a verdict for the defendants; and the plaintiff alleged exceptions.

*C. J. McIntire*, for the plaintiff.

*E. Avery & E. P. Brown*, for the defendants.

MORTON, J. 1. The statement made by the witness Lynch, after he had helped Boyle into the house, "that the platform had not been safe for six weeks previously," was rightly excluded. It was mere hearsay evidence. It did not tend to contradict Lynch, because he had not testified as to the condition of the platform. It was not admissible as a part of the conversation in the hack, to which Lynch had testified, because it was not shown to have been a part or continuation of that conversation. There is nothing in the bill of exceptions to show that the other parts of the conversation in the house were not properly excluded for the same reasons.

2. The only other exception alleged at the trial, and now insisted upon, was to the admission of the testimony of the defendants that they had no knowledge or information that the platform was defective or unsafe. The defendants might be held liable upon the ground that, it being their duty to build and maintain the platform, they had built it in a negligent manner, or that they knew, or by the exercise of reasonable diligence might have known, that it had become unsafe. The fact that they did not know it would not necessarily be a defence; but they had the right to show that fact by any competent evidence, in order to meet the claim of the plaintiff that they had put her intestate to work upon a platform which they knew, or ought to have known, to be defective. It does not appear that it was admitted or used for any other purpose.

*Exceptions overruled.*