JOSEPH W. SWEAT *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Suffolk.   January 14, 1892. — May 9, 1892.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Waiver of Exceptions — Evidence — Negligence — Duty of Railroad — Refusal to rule — Due Care.*

In an action against a railroad company for injuries occasioned to a brakeman in its employ, an exception to the admission of evidence that the platform by the track was a proper place for the plaintiff to run upon was waived by the defendant's counsel stating in his closing argument that he should not contend that the boxing or planking was not a place where brakemen were likely to run in the performance of their duties, or that it was not convenient for them to run there, or that the defendant had not reason to contemplate that the brakemen would so use it.

In an action against a railroad company for injuries occasioned to a brakeman in its employ, there was evidence that the accident, which occurred after dark, was caused by a loose board on a platform beside the track. *Held*, that evidence was admissible to show the presence of such a board at or near any place where, on the evidence, the jury would have been warranted in finding that the accident took place.

In an action against a railroad company for injuries occasioned to a brakeman in its employ, it appeared that the plaintiff was injured while running in the night on a platform on which he had a right to run in the discharge of his duty. *Held*, that the court could not say, as matter of law, that he was guilty of negligence in stepping on the edge of the platform, although but a few inches intervened between him and the moving cars.

An action was brought against a railroad company for injuries occasioned to a brakeman in its employ by stepping on a loose board on a platform beside the track. *Held*, that the jury were rightly instructed that it was incumbent on the defendant, not only to employ suitable persons to keep its works in repair, but also to use reasonable diligence to see that they performed their duty.

In an action against a railroad company for personal injuries sustained by a brake-
man in its employ, the defendant asked the court to instruct the jury that it
was entitled to reasonable notice of the existence of the defect complained of,
and an opportunity thereafter to repair the same. *Held*, that the request was
rightly refused, as it entirely omitted to refer to the liability of the defendant,
if the latter might, by the exercise of reasonable care, have known of the
defect.

In an action against a railroad company for personal injuries, the refusal to rule
that upon the whole evidence the plaintiff was not entitled to recover was *held*
to be correct, as it was a question for the jury whether the plaintiff was in the
exercise of due care, and there was evidence of negligence competent to be sub-
mitted to them.

LATHROP, J.   This is an action at common law, for injuries
sustained by the plaintiff, a brakeman on a freight train, while
in the defendant's employ.   At about eight o'clock in the even-
ing of September 6, 1887, the train, while on its way from Wor-
cester to Boston, was stopped, and the forward part of the train
was drawn by the locomotive engine into the defendant's yard
at Framingham.   Some of the cars were left there, and the loco-
motive engine with five cars started to go back to the train,
which had been left standing on the main track.   The front
car of this train was a little west of the end of a wooden box-
ing, made to protect the rods and wires which operated the
interlocking system of switches at this point.   This boxing was
about three hundred and seventy-five feet long, and two feet
and seven inches wide, and was parallel to the track.   The top
of it was formed of boards six or seven inches wide, and one
inch and a half thick, laid crosswise.   The boards projected
over the joists on which they were laid about three quarters of
an inch to an inch on each side.   The top of the boxing was
about half an inch above the top of the rail.   When the box-
ing was built, the boards on top were nailed down, except cer-
tain lids consisting of more than one board each.   These lids
were not nailed down, but were secured by cleats put on the
under side of them so that the lids would fit tightly and would
not come off without being lifted up.   At the easterly end of the
boxing was a tower used by the signalmen.

While the engine was backing the five cars towards the cars
which had been left standing, the plaintiff, according to his
testimony, went down a ladder on the side of one of the five
cars, and jumped on to the top of the boxing, and ran along by

the side of the cars, when, stepping on the end of a loose board, he was thrown under the moving train, and was injured. There was evidence that it was the plaintiff's duty to get to the stationary cars before the moving cars reached them, for the purpose of coupling the two parts of the train together.

At the trial, the top of the boxing was called a platform; and the defendant's first exception is to the admission of evidence that the platform was a proper place for the plaintiff to run upon. We need not consider whether the questions which were allowed to be put are open to the objection that they called for the opinions of the witnesses on a matter concerning which the jury could not properly be aided by such opinions, because the defendant's counsel in his closing argument stated that he should not contend that the boxing or planking was not a place where brakemen were likely to run in the performance of their duties; or that it was not convenient for them to run there; or that the defendant had not reason to contemplate that the brakemen would so use it. These admissions rendered the testimony of the witnesses immaterial; and the exception must be considered as waived.

The next exception of the defendant relates to the admission of evidence of loose boards being found in the platform at a point other than that at which the accident happened, if the plaintiff is to be held in respect to the place to the account given by him at the trial, as the defendant contends this account should be construed. The plaintiff there testified that he jumped off the car by the tower, with his lantern in his hand; that he ran about thirty feet, "he should say," and stepped on the end of a loose board, and was thrown under the train; that his right hand was caught, and he cried out, and was dragged about thirty feet, as near as he could judge; that he was kind of stunned; that he had never measured the platform, and did not know anything accurately about it, but should think it was about one hundred and fifty feet long. This account does not seem to us to fix the place with accuracy. There was, on the other hand, the testimony of another brakeman that he picked the plaintiff up twenty-five or thirty feet easterly from the westerly end of the platform, and found his lantern within three or four feet from him. This witness also testified that he should say

the platform was one hundred or one hundred and fifty feet long.  There was also other evidence put in by the plaintiff tending to show that the accident was near the westerly end of the platform.  Indeed, the defendant's theory of the accident was that it was caused by the plaintiff stepping off the westerly end of the platform.

Upon this state of the evidence, we do not think that the plaintiff is bound by his estimate that the place where he fell was within thirty feet of the tower.  The accident took place after dark, and a mistake might very easily have been made.  It has often been observed that very little reliance can be placed upon the estimate of a witness as to distances.  *The Carroll,* 8 Wall. 302, 304.  *City of Paris,* 9 Wall. 634, 637.  *The Great Republic,* 23 Wall. 20, 29.  The case at bar illustrates this.  The platform is stated in the exceptions to have been about three hundred and seventy-five feet long.  The plaintiff estimated its length to be one hundred and fifty feet, and another witness put its length at one hundred or one hundred and fifty feet.  There being evidence that the accident was caused by a loose board, evidence was admissible to show the presence of such a board at or near any place where, on the evidence, the jury would have been warranted in finding that the accident took place.

The defendant further contends that the court should have ruled, as matter of law, that the plaintiff was not in the exercise of due care in running so near the edge of the platform that one foot was on the part of a board which extended beyond the edge of the joist which supported it.  The width of the platform was only two feet and seven inches, and the board extended at the most only an inch.  The plaintiff was running on a platform which he had a right to run on in the discharge of his duty.  It was in the night; and we cannot say, as matter of law, that he was guilty of negligence in stepping on the edge of the platform, although but a few inches intervened between him and the moving cars.

One Graham, a witness called for the defendant, testified that he was a machinist, and that it was his duty to keep the boxes covering the signal rods and wires in repair; that he had his headquarters in Boston, and had two men under him, and was

himself under a master carpenter. In answer to the question, "How as to any repairs in the wooden boxes?" he answered, "Well, I reported anything I saw wrong, and the master carpenter attended to it." He was then asked, "Did you, or your men, attend to any of those repairs yourselves?" and he answered, "Well, we might put a nail in if it was required, if we saw anything that was loose." There was also evidence from which the jury might have found that the board which caused the injury had been loose for a day or two before the accident.

The defendant asked the court to instruct the jury that the full legal duty of the defendant to the plaintiff was to employ persons of competent skill and experience, whose business it was to keep the boxing over the rods and wires in proper condition as to repairs; and that if the jury found that it did employ such persons the plaintiff could not recover. The court rightly refused to give this instruction. It did not fully and accurately state the duty which the defendant owed the plaintiff. It was incumbent on the defendant, not only to employ suitable persons to keep its works in repair, but also to use reasonable diligence to see that they performed their duty; and so the jury were instructed. *Moynihan* v. *Hills Co.* 146 Mass. 586. *Daley* v. *Boston & Albany Railroad,* 147 Mass. 101, 114. *Myers* v. *Hudson Iron Co.* 150 Mass. 125. *Babcock* v. *Old Colony Railroad,* 150 Mass. 467. *Donahue* v. *Drown,* 154 Mass. 21. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407. *Connors* v. *Durite Manuf. Co., ante,* 163.

The defendant also asked the court to instruct the jury that the defendant was entitled to reasonable notice of the existence of the defect complained of, and an opportunity after such notice to repair the same. This request was rightly refused. It entirely omits to refer to the liability of the defendant, if the latter might by the exercise of reasonable care have known of the defect. *Durgin* v. *Munson,* 9 Allen, 396, 399. *Arkerson* v. *Dennison,* 117 Mass. 407. *Boyle* v. *Mowry,* 122 Mass. 251.

The defendant also asked the court to rule, that upon the whole evidence the plaintiff was not entitled to recover. We have already stated that it was a question for the jury whether the plaintiff was in the exercise of due care, and we are of

opinion that, for the reasons before stated, there was evidence of negligence competent to be submitted to the jury.

*Exceptions overruled.*

*S. Hoar,* for the defendant.
*F. E. Snow,* for the plaintiff.