MICHAEL DONNELLY

*vs.*

BOOTH BROTHERS AND HURRICANE ISLE GRANITE COMPANY.

Knox.    Opinion March 23, 1897.

*Negligence.    Fellow-Servant.    Vice-Principal.    Defective Machinery: Exceptions.    Verdict.*

An employer, whose duty it is to provide reasonably safe appliances, cannot escape liability for his negligence, by employing incompetent or unsuitable persons to discharge it.

The servant is not required to take the risks of carelessness of those who undertake to discharge, under the master's directions, the master's duty towards him, even if they are also servants of the same master.

*Held;* in this case, that the plaintiff's injury resulted from the breaking of a defective rope that sustained a platform on which he was at work, which should have been discovered before it was used and would have been, if reasonable care had been exercised in the selection of the tackle; and that the neglect in this respect was not that of a fellow-servant, but was a failure on the part of the defendants to use the necessary precautions which the law requires of the master towards his servant.

Whether a particular case falls within the duty of the master, or that of the servants, as such, is a mixed question of law and fact, to be submitted to the jury, as to the fact, under legal rules; and its determination depends upon the circumstances of the case.

*Held;* in this case, that it was the duty of the defendants to use reasonable diligence to furnish a safe platform with safe appliances for its support. They, through their vice-principal selected the men to do this work, men not shown to be suitable,—and from their own testimony as to the faulty appearance of the rope which broke, observed by them when they applied it,—evidently unsuitable men to be intrusted with it. There was, therefore, both negligence in the selection of agents and also in the failure to inspect the gear to be used.

Where a large number of exceptions to a charge consists of extracts, detached from their context, *held;* that to judge of the instructions excepted to, the whole charge must be examined.

The court will not disturb a verdict upon the ground of excessive damages unless it very clearly appears to be excessive upon any view of the facts which the jury are authorized to adopt.

On Motion and Exceptions by Defendants.

This was an action in which the plaintiff claimed to recover for injuries sustained through the negligence of the defendants. At the time of the injury the plaintiff was in the employment of the defendants and was assisting in loading a schooner with paving at the defendants' wharf. In this work a platform or staging was used, one end resting upon the wharf and the other extended out over the hatchway of the vessel, this end being supported by the fore and main throat halyards of the vessel. While the last carload of paving rested upon this platform the fore throat halyard gave way, and the plaintiff fell to the deck, receiving the injuries complained of. The defendants contended that they were not responsible for the injuries: denied that there was any negligence; and claimed that if there was any negligence it was the negligence of a co-servant of the plaintiff; that the platform or staging was

rigged and secured, and the materials used therefor were selected by the men engaged in loading the vessel, fellow-servants of the plaintiff; that everything connected with securing it in place was invariably intrusted to them, and that on this, as on all other occasions, these fellow-servants made their own selection of gear with which to secure the platform or staging, there being all the gear of a three-masted schooner from which to make the selection; and that if they negligently used unsafe halyards, that such negligence was the negligence of a fellow-servant of the plaintiff; and for that reason the plaintiff was not entitled to recover.

The jury returned a verdict of $1,218.30 for the plaintiff.

The case appears in the opinion.

*W. H. Fogler* and *A. A. Beaton*, for plaintiff.

*C. E.* and *A. S. Littlefield*, for defendants.

The great controversy in this case, upon the legal proposition, is whether the completed and secured appliance invariably used for the loading of paving was put together and secured by the workmen in their own way, and from ample materials furnished by the defendants from which to make their selection; or whether it was the legal duty of the defendants to see that the run, when put in place and secured, was in all respects safe and sufficient.

Counsel cited: *Arkerson* v. *Dennison*, 117 Mass. 407; *Kelley* v. *Norcross*, 121 Mass. 508; *Killea* v. *Faxon*, 125 Mass. 485; *Kennedy* v. *Spring*, 160 Mass. 203; *Burns* v. *Washburn*, 160 Mass. 457; *O'Connor* v. *Rich*, 164 Mass. 560; *McKinnon* v. *Norcross*, 148 Mass. 533; *McGinty* v. *Athol Reservoir Co.*, 155 Mass. 183; *Beeseley* v. *Wheeler*, 27 L. R. A. 266, (1894), Mich.

SITTING: WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

STROUT, J. Defendants operated a granite quarry at Long Cove. They were shipping granite paving blocks by a schooner lying at a wharf. The mode of loading the blocks on board was over a run or platform, sixteen to eighteen feet long, one end rest-

ing upon the wharf, and the other supported by rigging attached
to the vessel's throat halyards. This end extended to the forward
hatch and was elevated about seven feet above the deck. The
paving blocks were placed in a car and pushed over rails upon this
run or platform, and dumped into the hold of the vessel. The
plaintiff was in the employ of the defendants, as a common laborer,
doing such various kinds of work as he was directed to do. On
September 29, 1894, he was injured, while engaged in loading
paving blocks upon the schooner, by the falling of the run or plat-
form upon which he then was with a car of blocks, near to the end
of the platform, at the forward hatch. The fall was caused by the
breaking of the fore throat halyard which supported the right end
of the platform at the hatch. The platform and loaded car
weighed about two tons. The platform had been put in position
in the afternoon of the preceding day and fell at about two o'clock
on the day of the accident. While in position some thousands of
paving blocks had been loaded into the vessel, having passed over
this platform. It fell with the last load on the car. James M.
Smith was superintendent of defendants' works at Long Cove, had
the general supervision for defendants of loading vessels and hired
and discharged the men. The platform belonged to defendants,
and in suspending it, the vessel's halyards were used. It was put
up on this occasion by direction of Smith. The work was done by
some laborers of defendants, called from their work of stowing
stone posts in the schooner, aided by some of the crew of the
vessel. These men selected the ropes used, from a quantity of
ropes on board. Plaintiff had nothing to do with this, but after
the platform was rigged in place, he was directed by Smith to help
load the blocks on board and was so engaged when the accident
occurred. He had no knowledge of the condition of the ropes
which suspended the platform. That Mr. Smith in all matters
connected with the loading of the vessel, stood in the place of
defendants and represented them as a vice-principal is abundantly
proved. Any negligence of his therefore in regard to duties rest-
ing upon defendants, is in law their negligence. There is no
claim that any want of care on the part of plaintiff contributed to

the accident. *Dube* v. *Lewiston*, 83 Maine, 217; *Mayhew* v. *Sullivan Mining Co.*, 76 Maine, 108–109. The only issue presented was whether the defendants were guilty of negligence in securing the platform and the selection of gear; or whether, if there was any negligence, it was that of a fellow-servant of the plaintiff, for which defendants were not responsible.

The defendants made six requests of the presiding judge for instructions, which were not given in terms, and have taken twenty-two exceptions to the charge consisting of detached extracts therefrom. The whole charge is reported as part of the exceptions.

The duty of a master to his servant, in furnishing machinery or appliances for the work, has been repeatedly stated by this court. In *Buzzell* v. *Laconia Company*, 48 Maine, 116, it is said "it is the duty of every employer to use all reasonable precautions for the safety of those in his service. He should provide them with suitable machinery, and see that it is kept in a condition which shall not endanger the safety of the employed. If the employer knowingly makes use of defective and unsafe machinery, when an injury is done to a servant ignorant of its conditions, and in the exercise of ordinary care, he should compensate the person thus injured." . . . . "The superior intelligence and determining will of the master demand vigilance on his part, that his servants shall neither wantonly nor negligently be exposed to needless and unnecessary peril." . . . . " The same reasoning which shows that the machinery and other instruments of labor should be safe, would demand that the bridges used in passing from one part of the premises to another, or the ladders used in ascending to or descending from labor, and that the passage ways in the premises of the employer and within the precincts of the place where the labor is to be done should be safe and convenient." In *Dixon* v. *Rankin*, 14 Court of Session Cases, 420, cited with approval by this court, in same case, supra, it is said " the master of men in dangerous occupations is bound to provide for their safety. This obligation extends to furnishing good and sufficient apparatus and keeping the same in good condition." And in *Hull* v. *Hall*, 78 Maine, 118, the court said, " to render the master liable, it must

appear that he knew, or from the nature of the case ought to have known of the unfitness of the means of labor furnished to the servant, and that the servant did not know or could not reasonably be held to have known of the defect."

And in *Shanny* v. *Androscoggin Mills*, 66 Maine, 425, it is said that " the employer provides the means of carrying on the business ; and as a matter of course he assumes the responsibility that his work shall be done with due care; and, as the responsibility continues so long as the means are used, so must the same care be exercised in keeping the required means in the same safe condition as at first."

In a late case in New Jersey, *Comben* v. *Belleville Stone Co. of New Jersey*, (N. J. 1897,) reported in the Atlantic Reporter, Vol. 36, p. 473, after stating the general principle, the court says " the master is responsible for the negligence of any agent whom he may select to perform this duty for him if the agent fails to exercise reasonable care and skill in its performance." See also *Chicago M. & St. P. R. Co.* v. *Ross*, 112 U. S. 390.

And in cases like *Kelley* v. *Norcross*, 121 Mass. 508, where it was held that if " the master does not undertake the duty of furnishing or adapting the appliances by which the work is to be performed, but this duty is intrusted to or assumed by the workmen themselves, within the scope of their employment, he is exempt from responsibility, if suitable materials are furnished and suitable workmen are employed by him, even if they negligently do that which they then undertake." The exemption fails if *"suitable workmen"* are not employed. Here, common laborers, engaged in stowing stone posts in the schooner, were charged with the duty of securing the platform, and allowed to select the gear, without instruction, and there is no evidence that they possessed the requisite skill, intelligence or care, a fact to be shown by the defendants, if they would escape responsibility. The law will not allow an employer, whose duty it is to provide reasonably safe appliances, to escape liability, by employing incompetent or unsuitable persons to discharge it. But in the case last cited the court say, " the servant is not required to take the risks of the careless-

ness of those who undertake to discharge, under the master's direction, the master's duty towards him, even if they are also servants of the same master." *Ford* v. *Fitchburg Railroad*, 110 Mass. 260. See also *McKinnon* v. *Norcross*, 148 Mass. 536. When the selection of materials or construction of the appliances to the business is such that it may properly be left to the workmen, in their capacity as workmen, and within the scope of their employment, and it is so left by the master, he is relieved from responsibility for their negligence, as in the case of a mason or carpenter, building a house, where in the progress of the work, a staging is being frequently changed or enlarged. Whether a particular case falls within the duty of the master, or that of the servants as such, is a mixed question of law and fact, to be submitted to the jury, as to the fact under legal rules, and its determination depends upon the circumstances of the case. *Arkerson* v. *Dennison*, 117 Mass. 412; *McGinty* v. *Athol Reservoir Co.*, 155 Mass. 187.

This question was submitted to the jury under suitable instructions and they found that the rigging of the platform and selection of gear was within the duty of the master and not within that of the servants, in their capacity as servants.

Upon this finding of fact, it was the duty of defendants to use reasonable diligence to furnish a safe platform with safe appliances for its support. They, through their vice-principal Smith, selected the men to do this work, men not shown to be suitable, and from their own testimony as to the faulty appearance of the rope which broke, observed by them when they applied it, evidently unsuitable men to be intrusted with it. There was, therefore, both negligence in the selection of agents and also in the failure to inspect the gear to be used.

It is claimed that the rigging of the platform was ordinarily done by the fellow-servants of the plaintiff. If that be true, the duty to furnish safe appliances resting upon defendants, it will not relieve them from liability. They must discharge their duty in the premises. Negligence, however often repeated, will not ripen into an excuse for a neglect from which injury results.

An application of these principles shows that all the requested instructions were properly refused.

It will serve no useful purpose to consider specifically the exceptions to the charge. They consist of extracts, detached from their context, and nearly all of them relate to the question whether it was the duty of defendants to furnish the run and gear, in a reasonably safe condition; or whether the workmen, as such, had rightful authority to select from materials furnished by defendants and thus exempt the defendants from responsibility for their negligence.

To judge of the instructions excepted to, the whole charge must be examined.

James M. Smith stated fully his duties and authority at Long Cove, under his employment by the defendants. It was a question of law, whether he occupied, as to the plaintiff, the position of vice-principal, or was a fellow-servant with plaintiff. The court instructed the jury that he was a vice-principal, and stood in place of the defendants, and his acts or omissions were those of the principal. There can be no doubt that upon the evidence in the case this instruction was correct. The argument of defendants that the question was submitted to the jury is not well taken; but if it was submitted to them, the defendants cannot complain, as the jury decided it correctly. The important question, whether the erecting and support of the run, including the selection of the gear, was within the duty of the principal, or that of the workmen, as a part of their work as servants or workmen, was suitably presented to the jury, coupled with the correct rule of law, that in the former case, any negligence would be that of defendants, and in the latter it would be that of a fellow-servant, for which the principal would not be responsible. This instruction was as favorable to defendants as could be required. *Arkerson* v. *Dennison*, 117 Mass. 412.

We have carefully examined the charge and find that it presented the legal questions involved, clearly and appropriately and fully preserved all the rights of the defendants. The exceptions must be overruled.

Upon the Motion: The jury found that the duty of placing and securing the run, including the selection of suitable gear, rested upon the defendants, and was not within the ordinary duty of the

workmen, as workmen, and that when the plaintiff was directed by James M. Smith, the defendants' alter ego, to work upon that stage, it was held out to him by the defendants as a reasonably safe structure for him to labor upon, and that he had the right to so regard it; that it was in fact unsafe and that the defendants were negligent in the selection of gear which they ought to have known, and with the exercise of reasonable diligence would have known was insufficient, and that in consequence the plaintiff was injured. We think the evidence justified these findings. *Atkins* v. *Field*, 89 Maine, 288.

That the rope which broke was insufficient, is undoubted. Res ipsa loquitur. That it appeared to be old, weather-beaten, and of doubtful strength, was seen by Peter Smith, one of the men who helped rig the run. He says: "I see the rope was kind of poor and so I took a piece of warp and went up and made it so safe that it was safe for anybody to go up. They appeared to be old, old rope, or part of it." After it broke he examined it, and he says: "I should think by the looks of it the rope had been poor. I didn't open the rope to see, but I should judge it was poor." Jones, a witness for defendants, says he untwisted the rope, and "it was weather beaten some," did not look new. Dwyer, another of defendants' witnesses, says he examined the rope after the accident and "found the rope looking very weather beaten on the outside. I unlaid it and found it was all bright inside." "Probably two-thirds of the rope was good rope." He says he should judge "it would hold up a ton easy enough." He says the run and car and load of paving "didn't weigh over two tons" in his opinion. He also says: "When a car has got a hundred paving in it, it is pretty heavy and running it out on the end of the stage, brings a heavy strain on the tackle of course, and when it is dumped it rises about, well six or eight inches, that of course would cause a chafing in the upper block." He also says that the rope would not chafe if the block was in good running order. It is apparent that to sustain such a strain as was put upon this tackle, required the use of thoroughly sound rope of sufficient size, and it cannot be doubted that a reasonably careful examination of this rope, before

it was attached to the run, would have shown its insufficiency. The fact that it sustained the strain till the last load, is immaterial. No unusual strain is shown at this time. It was evidently a weak rope at the beginning, gradually growing weaker with each load upon it, until its tensile strength for the load upon it utterly failed.

We are satisfied with the finding that the defendants' duty required them to use reasonable care in the erection and maintenance of the run and the selection of suitable gear for that purpose, and that this duty was not properly discharged by them; and for the consequences of this neglect, they are legally responsible to the plaintiff.

While the damages are large, we cannot say that they are so excessive as to require us to disturb the verdict. At the plaintiff's age, entire recovery cannot be as certainly predicated as it might be in a younger person. His pain and suffering, which was an element of damage, it is difficult to compensate for in money by any definite rule of computation. Much is left to the good judgment of the jury. There is a conflict in the testimony as to the extent of plaintiff's recovery and his ability to labor. The jury saw and heard the witnesses and were in a better position to determine the exact facts than the court can be; and we are reluctant to disturb a verdict upon this question unless it very clearly appears to be excessive upon any view of the facts which the jury were authorized to adopt. Such is not the case here and the entry must be,

*Motions and exceptions overruled.*