## SOWLES v. NORCROSS BROS. CO.

(Circuit Court of Appeals, Second Circuit.  March 11, 1912.)

No. 41.

1. MASTER AND SERVANT (§§ 101, 102*)—OBLIGATION OF MASTER—SAFE PLACE AND SAFE INSTRUMENTALITIES.

A master must, as a general rule, use reasonable diligence to furnish his servants a safe place and safe appliances, and a servant to whom such duty is delegated is a vice principal, and his negligence is the negligence of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 172, 180–184, 192; Dec. Dig. §§ 101, 102.*]

2. MASTER AND SERVANT (§ 107*)—OBLIGATION OF MASTER—SAFE PLACE AND SAFE INSTRUMENTALITIES.

The rule that a master must use reasonable diligence to furnish his servants a safe place and safe appliances does not apply where a master supplies suitable materials for the construction of an appliance, which he is not required to furnish in a completed state, and which the servants within the scope of their employment must construct, and where the construction of an instrumentality is a part of the work to be done by the servants, all servants engaging in the work, including the foreman in charge, are fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 178, 179, 199–202, 212, 254, 255; Dec. Dig. § 107.*]

3. MASTER AND SERVANT (§ 107*)—OBLIGATION OF MASTER—SAFE PLACE AND SAFE INSTRUMENTALITIES.

A master need only furnish suitable materials for the construction by the servant of scaffolds, stagings, and other structures of a temporary character, where it is apparent that a servant in undertaking the work knows that the construction of the appliances is an incident to the performance of his duties, but where an appliance is of an unusual character, which the servant does not and cannot be presumed to know how to construct, and which the foreman in charge directs him to construct in a particular way, the construction of the appliance is not a detail of the servant's work, and the master is liable for the foreman's negligence, and the question whether in a given case an instrumentality is of such a character that the master is responsible for its construction is a mixed question of law and fact for the jury, and to justify a directed verdict for the master the inferences to be drawn from the evidence must only be susceptible of the construction that the appliance was a temporary one, which the servants were required to construct as a detail of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 178, 179, 199–202, 212, 254, 255; Dec. Dig. § 107.*]

4. APPEAL AND ERROR (§ 927*)—QUESTIONS REVIEWABLE—JUDGMENT ON DIRECTED VERDICT—EVIDENCE.

The court on reviewing a judgment for defendant entered on a directed verdict must consider the testimony of plaintiff most favorable to him.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 4024; Dec. Dig. § 927.*]

5. MASTER AND SERVANT (§ 117*)—INJURY TO SERVANT—LIABILITY OF MASTER—NEGLIGENCE OF FOREMAN.

A breast derrick inside of a building in process of construction, for use in construction, is not, as a matter of law, an ordinary appliance which the servants should be expected to construct in the course of their work, where the servants knew little about the proper construction of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the derrick, and where there was no evidence of a custom for workmen to erect it as a detail of the work, and the jury must determine whether the construction of the appliance is an incident to the performance of their duties within the rule relieving the master from liability for the negligence of the foreman in directing the work, or an appliance which the master, in the performance of his duty to furnish safe appliances, should furnish, so as to make him liable for the negligence of the foreman.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 208; Dec. Dig. § 117.*]

6. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—ASSUMPTION OF RISK.
Whether a servant, injured while assisting in erecting a breast derrick, pursuant to the orders of the foreman in charge, assumed the risk of injury, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

7. MASTER AND SERVANT (§ 289*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
Whether a servant assisting in erecting a breast derrick, pursuant to the orders of the foreman in charge, was guilty of contributory negligence, defeating a recovery for injuries sustained by the fall of the derrick, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

In Error to the Circuit Court of the United States for the District of Vermont.

Action by Elijah D. Sowles against the Norcross Bros. Company. There was a verdict for defendant, and plaintiff brings error. Reversed.

Writ of error to review a judgment of the Circuit Court, District of Vermont, in an action by a servant to recover damages from a master for personal injuries.

The verdict below was directed by the court in favor of the defendant. Consequently, the plaintiff upon this writ of error is entitled to have the testimony considered from the point of view most favorable to him, and so considering it, the more material parts may be thus summarized:

At the time of the accident—November 11, 1904—the plaintiff was employed by the defendant as a carpenter in the work of erecting a church at Dorset, Vt., for which the defendant had a contract.

One Faucher was the superintendent in charge of the work. He employed and discharged the workmen and gave the necessary directions.

It became necessary to erect a derrick for use inside the building and Faucher directed the plaintiff and other workmen to construct one, there being a mast for the purpose available. Faucher then left the work for a few days. During his absence the plaintiff and other workmen set up the mast in a fixed perpendicular position and thus made a stationary appliance. Upon Faucher's return he was dissatisfied with what had been done and directed the plaintiff to change the derrick into a breast derrick.

A breast derrick is one which is not stationary, but is adjustable so that the mast may be leaned back and forth with a pair of falls. The plaintiff did not know how to construct a breast derrick and no testimony was offered establishing a custom for workmen to erect them as a detail of their work. The witness Faucher testified that he sometimes put them up himself, "sometimes I directed the men to do it and sometimes had a rigger, a sailor-man, a man who makes that his business."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Faucher gave directions to the plaintiff as to how to change the stationary mast into a breast derrick without taking it down and the work proceeded as he directed. The location of some of the guys was changed and a hole was bored by the plaintiff through the top of the mast into which a pin was placed with an attached pulley through which it was intended to run the southerly guy rope. This was done about the end of the day and Faucher directed the plaintiff to get some additional rope at the mill for use the next morning.

The next day the plaintiff reported to Faucher that he could not get the rope and Faucher said that they would get along without it and lean the mast over to the south. This was done and Faucher said that it was all right. Thereupon Faucher told the plaintiff to unfasten the southerly guys and go up the mast and thread them through the pulleys at the top. Accordingly the southerly guys were unfastened and the plaintiff went to the top of the mast and while attempting to thread the guys through the pulleys, the mast fell to the north and he received the injuries complained of.

When the southerly guys were unfastened there was nothing to prevent the mast falling to the north except the fact that it leaned to the south, and there was testimony from which the jury could have found that the cause of the accident was that the mast did not lean far enough to the south. The testimony offered by the defendant tended to show that the cause of the accident was the failure on the part of the plaintiff to properly fasten a head line or extra guy to the mast on the southerly side which would have prevented its falling to the north. The plaintiff, however, denied that the rope referred to was a guy or head line and stated that it was a rope which he fastened to the mast for his own convenience in hauling up materials.

The trial court directed a verdict for the defendant upon three grounds:

(1) That Faucher was a fellow-servant of the plaintiff and not a vice-principal with respect to the work of erecting the derrick and, consequently, that the defendant was not responsible for his negligence.

(2) That the plaintiff assumed the risk.

(3) That the plaintiff was guilty of contributory negligence.

Edwin Lawrence, Robert A. Lawrence, and Bert L. Stafford, for plaintiff in error.

Thomas W. Moloney, for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The action of the trial court in directing a verdict for the defendant upon the ground that Faucher was a fellow-servant of the plaintiff was necessarily based upon the assumption that there was evidence sufficient to justify the jury in finding that he was so negligent in his directions regarding the construction of the derrick that if he stood in the position of vice-principal, the defendant was liable—otherwise the character of his acts was unimportant and the direction uncalled for. Consequently, in reviewing the decision it is our duty to make the same assumption.

In considering the question of the defendant's responsibility for Faucher's negligence, it will not carry us far to state the now well-settled rule that such responsibility depends upon the character of Faucher's act rather than upon his rank. Faucher may have been superintendent and in charge of the work, with power to hire and discharge workmen, without it following that he was more than a fellow-servant in respect of this particular matter. So we shall not make especial progress by stating that if the duty in the performance of which Faucher failed was one which the defendant owed as master,

Faucher was a vice-principal and the defendant responsible. The question will remain—and it is the important question in the case: What was the duty which the defendant owed regarding the construction of the derrick?

With regard to the defendant's duty, it is contended in its behalf, at the outset that the facts show a case in which the prosecution of the work necessarily changed the character of the place in which, and the appliances with which, the employees worked. It is said that this case is analogous to the numerous cases in which workmen have been injured while making excavations of rock or earth. And it is, of course, true that in such cases a master owes no obligation to stand by during the progress of the work to guard against damages, and does his duty when he supplies the workmen with proper means for protecting themselves. But in this case, we fail to see that the progress of the work affected the safety of the breast derrick. The accident happened before it had been completed or used, and was caused —so the jury might have found—by the fact that the mast was set up improperly. The question of the defendant's liability turned upon the question whether it was its duty, or that of the servants, to set it up properly.

[1] The general rule is that a master is bound to use reasonable diligence to furnish his servants a safe place and safe instrumentalities for the accomplishment of the work to be done. For any failure to perform this duty, the master is answerable not only for his own neglect, but for that of any servant to whom he may delegate the duty. In respect thereof such servant is a vice-principal without regard to the rank which, in other respects, he may hold in his master's service. If the general rule were applicable in this case, and the cause of the accident that claimed by the plaintiff, the defendant would undoubtedly be liable, because the mast leaning insufficiently to the south was unsafe to work upon after the southerly guys were unfastened.

[2] An exception to the general rule exists in a case where a master supplies suitable materials for the construction of an appliance which he is not required to furnish in a completed state, and which the workmen, within the scope of their employment, are themselves required to construct. The underlying question upon which the application of the exception depends, is whether the construction of the instrumentality is a part of the servants' work to be done. If it is, the persons engaged in the work are, including the foreman in charge, fellow-servants.

In Kelley v. Norcross, 121 Mass. 508, the Supreme Judicial Court of Massachusetts said regarding the duty and responsibility of the master:

"Where, however, the master does not undertake the duty of furnishing or adapting the appliances by which the work is to be performed, but this duty is intrusted to or assumed by the workmen themselves, within the scope of their employment, he is exempt from responsibility, if suitable materials are furnished and suitable workmen are employed by him, even if they negligently do that which they thus undertake."

See, also, Callan v. Bull, 113 Cal. 593, 45 Pac. 1017; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630; Kerr-

Murray Mfg. Co. v. Hess, 98 Fed. 56, 38 C. C. A. 647; Garrow v. Miller, 72 Vt. 284, 47 Atl. 1087; Lambert v. Missisquoi Pulp Co., 72 Vt. 278, 47 Atl. 1085; Fraser v. Red River Lumber Co., 45 Minn. 235, 47 N. W. 785; Maher v. McGrath, 58 N. J. Law, 469, 33 Atl. 945.

In Ross v. Walker, 139 Pa. 42, 51, 21 Atl. 157, 159 (23 Am. St. Rep. 160), the Supreme Court of Pennsylvania pointed out conditions under which a foreman or superintendent would be regarded as a fellow-servant:

"It was not material to this inquiry, to know whether 'Duffey had entire charge and control of the work' as a foreman or not; nor to know whether he selected from the mass furnished by the employer the materials to be used for any particular purpose or not; nor whether he hired and discharged men or not. The inquiry is, was it the employer's duty, after having provided materials ample in quantity and quality, to supervise the selection of every stick out of the mass for every purpose? To state this question is to answer it. This was not his duty, and for that reason Duffey, if he did select the timber, * * * did not represent Walker as a vice-principal in such selection."

On the other hand Woods v. Lindvall, 48 Fed. 72, 1 C. C. A. 46, the Circuit Court of Appeals for the Eighth Circuit, indicated conditions under which a superintendent would be held to be a vice-principal:

"Whether the trestle was one of those structures the building of which the master might have committed to ordinary fellow-laborers, without any instructions or superintending care, by simply providing them with adequate materials and tools to do the work, need not be discussed. The plaintiff in error did not attempt to build the trestle in any such way. They did not leave the mode and manner of its construction to the discretion or judgment of the laborers doing the work, but they constituted Murdock their representative, and imposed on him the duty, and conferred on him the authority to supervise, direct, and control its construction, and required the laborers to obey his orders and directions in the premises. Under these circumstances, Murdock did not sustain the relation of a fellow-servant to the defendant in error in respect to this work. He stood in the shoes of his employers, and was their representative, and they are responsible for the results of his negligence in the work so committed to his direction, supervision, and control."

[3] The foregoing principles have often been applied in the case of scaffolds, stagings and other structures of a temporary character where it has been held that the master is required only to furnish suitable and proper materials for their construction and where superintendents, foremen and other superior employees have been held to be fellow-servants of the injured workmen. In these cases it is apparent that a servant in undertaking the work knows that the construction of these appliances is an incident to the performance of his duties. These appliances are of such a temporary and ordinary character that their construction may properly be regarded as a detail of the work to be done and the master does his duty when he supplies suitable materials. In such clear cases a court may be justified in directing a verdict in favor of the master. On the other hand if the appliance be of an unusual character which the servant does not (and cannot be presumed to) know how to construct and which the foreman directs him to con-

struct in a particular, manner, it may not be apparent that such con-struction should be regarded as a detail of the servant's work. Indeed the facts may be such as to make it manifest that such work belongs to the master and be so clear as to call for a direction in favor of the servant. The considerations which determine the application of these governing principles are discussed by the Circuit Court of Appeals for the Eighth Circuit in F. C. Austin Mfg. Co. v. Johnson, 89 Fed. 681, 32 C. C. A. 313:

"On the part of the company it is claimed that the scaffold was of such a character that it comes within the exception to the general rule, which relieves the master from liability for stagings or scaffoldings erected by laborers who are to work thereon, and wherein it is held that the master's duty is performed if suitable materials are furnished for the erection of the scaffold. This exception originated in cases wherein a servant, such as a bricklayer, mason, carpenter, or the like, undertakes the performance of some work, like the erection of a wall, shingling a roof, or painting a house, which of necessity requires the construction of a scaffold or staging upon which the workmen may stand, when engaged at work, and wherein it is customary for the master to furnish the materials, and the mechanics to actually construct therefrom the staging necessary for the work. In this class of cases, the workmen will know the extent of the burden to which the staging will be subjected, and they are at liberty to make the same as strong as they deem necessary. The method of the construction of the scaffold is under their control, and they have the necessary knowledge of the strain it will be subjected to when in use to enable them, by the use of due care on their own part, to safely construct the same; and under such circumstances, if the scaffold proves to be insufficient, it will be due to the lack of proper care on part of the workmen, assuming that the master has exercised due care in furnishing safe materials for the construction of the staging. In such cases the master is relieved from responsibility, not because the place where the workmen are employed is a scaffold simply, but because the master did not in fact undertake to furnish the scaffold for the use of the workmen when in his employ. The liability of the master cannot be determined simply by showing that the place where the workmen were engaged in his service was a scaffold, but it must depend upon the nature of the scaffold; the purposes it is to subserve; whether it could be properly left to the workmen to determine and control the method of its erection; whether they did in fact control its erection, or whether the master had charge thereof."

This examination of the subject necessarily leads to the conclusion that the question whether in a given case the instrumentality is of such a character that the master is responsible for its construction or does his full duty by supplying the workmen with suitable materials, must generally be a mixed question of law and fact which the jury must determine. The question which one of the duties is chargeable to the master is ordinarily to be submitted to them with proper instructions. Nonculpability must be very clear to justify a direction in the master's favor. In Donnelly v. Granite Co., 90 Me. 110, 116, 37 Atl. 874, it is said:

"When the selection of materials or construction of the appliances to the business is such that it may properly be left to the workmen, in their capacity as workmen, and within the scope of their employment, and it is so left by the master, he is relieved from the responsibility for their negligence, as in the case of a mason or carpenter building a house, where, in the progress of the work, a staging is being frequently changed or enlarged. Whether a particular case falls within the duty of the master, or that of the servant, as such, is a mixed question of law and fact, to be submitted to the jury, as

to the fact under legal rules, and its determination depends upon the circumstances of the case."

See, also, Arkerson v. Dennison, 117 Mass. 407.

In order, then, to justify in this case a direction of the verdict in favor of the defendant upon the ground that Faucher was a vice-principal, we must be satisfied that the evidence and the inferences to be drawn therefrom were only susceptible of the construction that the derrick in question was a temporary appliance which the workmen were required to construct as a detail of their work, and with respect to which construction Faucher acted as the plaintiff's fellow-servant.

[4, 5] Now, considering the testimony, and giving the plaintiff the benefit of the most favorable inferences to be drawn from it, we are not satisfied, as a matter of law, that this breast derrick was an ordinary structure which the plaintiff and the other workmen should have been expected to construct in the course of their work. This derrick was not like a scaffold or staging which any carpenter would know how to build, and which he would construct as one of the ordinary steps of his work. It was a kind of derrick which it is apparent the workmen knew little about, because it appears that the one which they attempted to construct in Faucher's absence was stationary. Upon the testimony in the case we fail to see how the court could itself say that the method of changing the stationary structure into a breast derrick was one which a workman should have understood or was necessarily a part of his work.

It may well be that there was abundant evidence in the case for the jury to find that this instrumentality was of such a character that the defendant was only obligated to furnish proper materials for its construction. It may be well that the language of Robinson v. Blake Mfg. Co., 143 Mass. 528, 533, 10 N. E. 314, 317, is applicable:

"A jury would naturally find that such selection of materials and appliances was a part of the work to be done and not within the implied duty and undertaking of the employer."

But the proposition that the jury might free the master is a very different one from the proposition that no breach of obligation upon its part can be found as a matter of law. We think that the Trial Court erred in itself finding that Faucher was not performing a duty owed by the defendant, as master, and was a fellow-servant of the plaintiff.

[6] The next inquiry is whether the Trial Court erred in directing a verdict for the defendant upon the further ground that the plaintiff assumed the risk.

In considering this question we must assume, as the jury might have found, that the cause of the accident was the fact that the mast did not lean far enough. But the evidence is that the plaintiff followed the directions of Faucher, and the jury would have been warranted in finding that he was ignorant of any improper adjustment of the derrick. Certainly it does not appear as a matter of law that the plaintiff knew of any defect, or that the danger was so obvious that he ought to have known it. It is impossible to say that there was an open and

visible risk which would have been comprehended under like circumstances by an ordinarily prudent man of the plaintiff's experience.

The argument that plaintiff himself created the defect which caused the accident by tying the so-called extra guy rope too loosely, and, consequently, must have impliedly agreed to accept the responsibility for any injury resulting from his own act, is ·inconsistent with the assumption which we have been obliged to make in considering the facts in the case, that the cause of the accident was the fact that the mast failed to lean sufficiently to the south. The evidence was, of course, sufficient to warrant the defendant in contending before the jury that the plaintiff created the defect, but the Trial Court was not justified, in the face of evidence to the contrary, in directing a verdict upon that theory, and we think that such action constituted error.

[7] The final inquiry is whether the court erred in directing a verdict for the defendant upon the ground that the plaintiff was guilty of contributory negligence.

While the defenses of assumption of risk and contributory negligence are independent, it is unnecessary to differentiate between them in the present case. The evidence pointed out as establishing the former defense is relied upon to prove the latter. And, as already shown, it was for the jury, and not the court, to determine the questions of fact arising thereon. The undisputed testimony did not justify a direction of the verdict upon the ground of contributory negligence.

The judgment is reversed.