(17 App. Div. 500.)

STEINER v. FOURTH PRESBYTERIAN CHURCH.

(Supreme Court, Appellate Division, First Department. May 14, 1897.)

VENDOR AND PURCHASER.—PERFORMANCE OF CONTRACT.

Plaintiff agreed to buy land from defendant, the deed to be delivered and the price paid on March 1, 1894. On that day it was found that the premises were subject to restrictive covenants, and a postponement was taken to March 20th; it being agreed that the title should be closed as of March 1st. Finally it was decided to submit the matter to the supreme court, and an opinion was handed down, in June following, holding that plaintiff should be relieved from his contract. In the meanwhile plaintiff had advanced money to defendant on account of the purchase price, which it was agreed should be without prejudice. At the request of defendant no judgment was entered on the decision of the court, but the parties met on October 12th to carry out the contract of sale. At that meeting the parties considered only their rights under the original contract, and no suggestion was made as to a new contract. Held that, since the delay in completing the contract was not due to the default of plaintiff and the property was all the while in the possession of defendant, plaintiff was not chargeable with the expense of carrying the property during that time.

Ingraham and Parker, JJ., dissenting.

Appeal from trial term, New York county.

Action by David Steiner against the Fourth Presbyterian Church, Thirty-Fourth Street, a religious corporation, to recover money alleged to have been received by defendant for plaintiff's use. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

A contract was entered into between the parties, by which the church agreed to convey to Steiner certain premises on Thirty-Fourth street, in consideration of the sum of $190,000, to be paid upon delivery of the deed on the 1st day of March, 1894. When the time for closing of the title arrived, it was found that the premises were incumbered by restrictive covenants, and thereupon an adjournment was taken to March 20, 1894. It was provided in the written consent of postponement that the transfer on the 20th day of March was "to be then made as of March 1st, 1894." Finally it was decided to submit the matter to the general term of the supreme court upon an agreed state of facts, 'and the matter stood in abeyance without further adjournment. Meantime the church, having engaged in the erection of a new edifice, required funds, and for that purpose a mortgage was placed upon the premises, and in addition thereto Steiner advanced further moneys on account of the purchase price,

which it was agreed should be without prejudice, to the extent of $35,000. The general term, in June, 1894, handed down an opinion, holding that Steiner should not be compelled to perform, and was entitled to recover the sum which he had paid on the contract, with interest and costs. 79 Hun, 314, 29 N. Y. Supp. 488. Although a proposed judgment and order embodying the general term decision was forwarded to the counsel for the church on September 1, 1894, it was on their request not entered, but instead an appointment was made to carry out the contract of sale for September 12th. As matter of fact, no judgment was entered canceling the contract. On October 12, 1894, the parties met pursuant to appointment, and then a dispute arose as to whether the transaction was to be closed as of March 1st or October 12th, and as to whether the plaintiff should be charged with the watchman's services, insurance, interest, etc., in the meantime. It was urged by counsel for the church that the order of the court on the application to sell the property provided that it should be sold for a fixed sum and closed on the 1st of March, and that they could not make any other arrangement whereby the church would incur the additional expense of carrying the property beyond the date for the delivery of the deed. Mr. Steiner claimed that, as he was not in possession of the property, and was not responsible for the delay, such expense should be borne by the church. The understanding under which Mr. Steiner paid the money which he did for these expenses in addition to the consideration price is in dispute. According to the plaintiff, the money was not paid to the church upon the understanding that it was not to be regarded as a voluntary payment, but was to abide the decision of the question whether the title was to be closed as of March 1st or October 12th, and that this question should be submitted to the court in an action. A subsidiary question was raised as to the right to recover $177.23 which was paid after the action was commenced and forwarded with a letter which reads: "This amount is to form part of the present litigation between the church and David Steiner, and is accepted subject to the same controversy, namely, if Mr. Steiner was entitled to a deed as of the time of closing, to wit, the 12th of October, 1894, the church is to return the amount. If, however, Mr. Steiner was bound to accept the deed as of the 1st day of March, 1894, the church is entitled to the amount." The plaintiff, having paid the amount, subject, as he claims, to the understanding that the right of the church to retain it was to be left to the court, brought this action to have the question determined; and at the close of the testimony the learned trial judge charged the jury, among other things, as follows: "The question for you to determine is whether, when this demand for interest and other expenses was made on the 12th of October, that it was made upon an agreement that it was so paid, with a view to the submission to a court subsequently of the right to exact it, and whether there was an understanding among the parties that it was to be retained by the church only in case it should be ultimately decided they had a right to it. * * * If you find in favor of the plaintiff, upon that dispute, as to the agreement, then the question, of course, will arise, was the church entitled to it? Upon that question I instruct you, as a matter of law, that the defendants were not entitled to demand it at that time." The jury having found in favor of the plaintiff, the church appeals from the judgment entered upon such verdict.

Argued before RUMSEY, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

Henry Thompson, for appellant.
Emanuel J. Myers, for respondent.

O'BRIEN, J. The abstract propositions of law for which the appellant contends, and most of which were charged by the court, are unexceptionable, namely, that, the title of the premises having proved defective, the plaintiff had the right on the 12th of October, 1894, to refuse to carry out the contract, and to receive from the defendant the amount of his advances with interest; that on that date the question whether the sale should be concluded or not depended upon

the subsequent agreement of the parties; that the defendant could not compel the plaintiff to take the title to the property on the 12th of October, nor could the plaintiff compel the defendant to transfer the title to him and bear the expense of carrying the property from March 1st to October 12th. Whether the sale should be consummated, or not, depended upon the subsequent agreement of the parties. In other words, either party, in October, could have treated the contract as ended, or they could have treated it as still existing, or they could have entered into a new and entirely different contract. If, on that day, the church had elected to rescind, and, in the place of the old, had substituted a new, agreement, under the terms of which the payment was required of not only the original consideration price, but, in addition, what it had cost to carry the property, then the plaintiff would have no legal right to recover back the amount so agreed to be paid. We think, however, it clearly appears, and the case was tried upon that theory, that neither of the parties had ever elected to rescind the contract, and, though there never had been any formal adjournments after the 20th of March, and pending the determination of the case as submitted to the general term, there is but one inference from the facts, and that is that both treated the contract as a still-subsisting one. When the parties met in October, there was no suggestion of entering into a new agreement, but they were discussing their respective rights as parties bound by a contract; and as appears from the testimony both of Mr. Myers and Mr. Cuming, the counsel for the plaintiff and defendant, respectively, the dispute centered upon the question as to whether the title, which, under the contract, one was to buy and the other to sell, was to be closed as of the 1st of March or the 12th of October. That the parties had the right to regard the contract as still existing between them, and could have agreed that the question of their rights thereunder should be submitted to the court, is not open for serious discussion. Upon the conflict in the testimony, the trial judge properly submitted the question as to whether, by arrangement between the parties, it was left to the court to decide who was to stand the expense of carrying the title, and correctly instructed the jury that, in order to entitle the plaintiff to recover back the money then paid, he must establish to their satisfaction that "it was received under an agreement that it should be paid in case the court decided that the church was not entitled to it." The jury having found that such an agreement was made, it brings us to a consideration of whether, treating the original contract, as the parties themselves did, as still existing, the church could insist upon the payment of the expenses of carrying the property pending the dispute as to marketability of the title.

Considering that the church was in possession, and had the benefits, if any, resulting therefrom, and that the plaintiff was not in default at any time, it is difficult to determine upon what principle of law a conclusion other than that reached by the learned trial judge could be arrived at,—that the defendant was not entitled to exact such payment from Mr. Steiner. The latter was entitled to a deed "free from incumbrance," and until the tender of such conveyance, with

the corresponding ability to convey, the vendee could not be placed in default. It was, in effect, this question of whether Steiner had unreasonably refused to perform that was submitted to the general term. That court, as we have stated, decided that his objections were good, and left him free to rescind the contract and get back what he had paid thereon if he so elected. As stated, however, neither side claimed that the contract was extinguished by the result of the proceedings in court, but, on the contrary, performance was tendered by both parties, and, Steiner having concluded to take notwithstanding the restrictions, the meeting in October was with a view to carrying out the contract; and, standing in this attitude to each other, the counsel for the church insisted that the order of the court authorizing the sale defined the duties of the trustees, and that by such order they were required to close the title as of March 1st, and were bound to collect the principal sum as of that date, with interest thereon accruing from the postponement of such payment, without regard to the cause of such delay. The fallacy of this contention, we think, lies in a failure to recognize that it was not the purchaser who was in default, but the church; and the question upon whom should fall any expense resulting from the delay must necessarily be determined, if it is to be determined at all, by a consideration of who was responsible or caused the delay. Therefore, when the parties met in October, after the lapse of several months from the original date, the question to be answered was, which of the contracting parties was in default, and to whom was the delay attributable? We think the obvious answer to these questions is that the default and the delay are both to be attributed to the church, and we can think of no good reason why, upon so concluding, the other contracting party should be charged with the expenses caused thereby.

With respect to the larger item of interest, that, in the absence of contract, is only awarded as damages upon the default of a party to meet his obligations. "Generally speaking, interest is allowed as damages for default in the payment of money at a specified time." 11 Am. & Eng. Enc. Law, tit. "Interest," 383, 389; Cutter v. Mayor, etc., 92 N. Y. 171. In Fry, Spec. Perf. (3d Ed.) p. 620, § 1399, it is said:

"Now, it is obviously inequitable, in the absence of express and distinct stipulation, that either party to the contract should at one and the same time enjoy the benefits flowing from possession of the property and those flowing from possession of the purchase money. The estate and the purchase money are things mutually exclusive. 'You cannot,' said Knight Bruce, in a case arising out of the sale of some slob lands in Chichester harbor, 'have both money and mud.' And so neither party can at the same time be entitled both to interest and the lands."

See, also, Id. § 1404.

The question, therefore, as to whether there was an agreement that the payment made by Steiner was not to be voluntary, but was to be received by the church subject to determination by the court as to whether it had the right legally to exact it, was, upon conflicting evidence, properly submitted as a question of fact to the jury, and the learned trial judge was right in holding that, if the plaintiff es-

tablished the existence of such an agreement, then, as a matter of law, in closing the contract, the church having remained in possession of the property, and being in default and unable to tender the deed contracted for, it had no right, standing upon the contract which it had entered into, to exact the payment of the expenses incident to the delay between the original date and the time when the title was finally closed.

The judgment and order should be affirmed, with costs.

RUMSEY and PATTERSON, JJ., concur.

INGRAHAM, J. (dissenting). When the parties met on the 12th day of October, 1894, to carry out the contract, the defendant claimed that, if the plaintiff wished to complete the contract, he must pay the consideration therein named, and must also bear the expenses to which the church had been put in carrying the property from March 1, 1894, to October 12, 1894, and this sum was fixed at $3,601.36. Subsequently the plaintiff complied with this demand of the church, and paid, in addition to the sum of $190,000, this sum of $3,601.36, and it is to recover the amount thus paid that this action is brought. The terms of the agreement between the parties under which this payment was made were disputed. The court submitted this question to the jury, stating that the question to be determined was "whether, when this demand for interest and other expenses was made on the 12th of October, that it was made upon an agreement that it was so paid, with a view to the submission to a court subsequently of the right to exact it, and whether there was an understanding among the parties that it was to be retained by the church only in case it should be ultimately decided they had a right to it." There was evidence to sustain a finding that there was such an agreement, and the jury by their verdict have found that such an agreement was in fact made, and that the money was paid under it. The court then charged the jury:

"In order to entitle the plaintiff to recover it back, he must establish to your satisfaction it was received under an agreement that it should be repaid in case the court decided the church was not entitled to it. If you find in favor of the plaintiff, upon that dispute as to the agreement, then the question, of course, will arise, 'Was the church entitled to it?'"

Upon that question the court charged, as a matter of law, that the defendant was not entitled to demand from the plaintiff at that time the amount expended by the church in carrying the property from the 1st of March to the 12th of October, and the correctness of this decision is the only question presented upon the record in this case.

When the parties met to complete the contract, on the 1st of March, the purchaser objected to the title on the ground that these restrictions were incumbrances upon the property. The parties agreed to submit that question to the general term of the supreme court upon an agreed state of facts, and upon that submission it was determined that such restriction was an incumbrance, and that the deed tendered by the church was not a compliance with its contract. When the parties met on October 12, 1894, the condition was that the defendant

had made a contract to convey property which it could not comply with, and that the plaintiff was entitled to be repaid the money which he had advanced to the church upon the contract. The plaintiff, however, when he agreed to then accept a deed to the property, and to pay the consideration named in the contract, waived the objection that he had made to the title tendered to him on March 1st as a compliance. He was not bound to comply with the contract because the defendant could not convey to him the title which it had agreed to convey, viz. a good title to the property, free from incumbrances. If, however, he was willing to waive that objection, and insisted on defendant conveying the property to him, giving him the title that it was able to convey, the question is, what was he bound to pay to the defendant for the conveyance of such a title? I think that the church had the right to refuse to make a new contract at that time, and could have refused to convey the property under the old contract, except upon the payment of the amount named in the contract, with interest from the time that the payment was to be made and the expenses in carrying the property. It was under no legal obligation to execute the grant upon any other terms. On the other hand, the plaintiff was not bound to accept a conveyance of such title as a compliance with the contract. The condition that then existed, therefore, was that, if the plaintiff wished to insist upon a completion of the contract at that time, he could only be entitled as a matter of right to a conveyance upon putting the church in the same condition that it would have been in had he complied with his contract on the 1st of March. In other words, the defendant was not in a position to insist upon the plaintiff's completing the contract at all. The plaintiff could insist upon the defendant's completing the contract only upon his putting the defendant in the same condition that it would have been in had the contract been completed at the date fixed. The defendant demanded that the plaintiff should pay the expense of carrying the property, which would put the defendant in the same position as if he had accepted the deed when tendered. That demand the plaintiff at first refused to comply with, but subsequently the understanding mentioned was reached, by which the sum was paid, subject to the subsequent determination by the court as to whether the defendant was entitled to insist upon its payment. As before stated, the defendant was not entitled to insist upon a completion of the contract by the plaintiff, but was bound to repay to the plaintiff the amount that he had advanced, with interest. On the other hand, the church was not bound to make a conveyance of the property, except upon condition that the plaintiff should pay the expenses occasioned by his refusal to accept the title tendered to him on the 1st of March; and the church, resting upon this right, refused to make such a conveyance unless the plaintiff put the church in the same condition that it would have been in had the plaintiff accepted the title tendered to him. It would seem that in this contention the church was clearly right. It had the right to insist upon this payment as a condition of its conveyance of the property. The plaintiff had stated that he did not wish a return of the money paid by him, but wanted the property, and insisted upon a conveyance to him of

the title which the church could have conveyed on the 1st day of March, and which it was then ready and willing to convey. That was the only conveyance it was bound to make; and if the plaintiff wished to insist upon his right to a conveyance of the property rather than a return of the money which he had paid, he was bound to have accepted that conveyance as of the 1st of March, when the title was tendered to him. The church was under no obligation to carry the property for him from the 1st of March, when he agreed to complete the purchase, until the time that he was ready to accept the title tendered.

The agreement to submit the question to the court as to the right of the defendant to insist upon this payment must be viewed in connection with the position taken by the plaintiff when he insisted upon a conveyance of the property and would not accept a return of the money paid by him upon the contract. The adjournment of the time for the completion of the contract was not at the request of or for the benefit of the church. The question presented would be quite different if the defendant had refused to give a deed at the time fixed for the closing of the title, and the plaintiff had then commenced an action for the specific performance of the contract, then demanding a deed of the title that the defendant could convey. In that case a court of equity would have compelled a specific performance, and would have compelled the vendor to convey as of the date at which the contract was to be performed; but here the vendor was ready and willing to convey at the time named, and on the 12th of October the plaintiff demanded a deed of the premises, which he had refused on the 1st of March. To entitle him to have such a demand complied with, the defendant was entitled that it should be placed in the same position that it would have been in had the contract been complied with, and had the plaintiff accepted the deed which was tendered to him on the 1st of March. I think, therefore, that the defendant was entitled to insist upon the payment of this sum of money as a condition for its delivery of the deed on the 12th of October, and that by the agreement under which the money was paid the plaintiff had no right to have it returned to him.

I think that the complaint should have been dismissed, and the judgment reversed, and a new trial ordered.

PARKER, J., concurs.