(Judge Cook of the Seventh Circuit sitting in place of Judge Henry.)

WILLARD E. WHEELER v. NORTHERN OHIO TRACTION CO.

1. DEATH BY EXCESSIVE CURRENT OF ELECTRICITY—PRIMA FACIE CASE.

Where an electric light company contracts with a bank to furnish it electricity for incandescent lights, requiring a current not to exceed one hundred and ten volts, which is harmless, and such bank fits up its banking room with wires and lamps for that purpose, it owning the same, and such company causes a current of electricity to pass over its secondary wires and into the bank, far in excess of the amount intended for lighting purposes, to wit, of from seven hundred to a thousand volts, which kills the cashier of the bank while handling a lamp in the performance of his duties: *Held*, that the fact of such excess of current entering the bank over the wires of the company makes a *prima facie* case of negligence against the company, and that it is error to refuse to so charge the jury when requested so to do.

2. IMPERFECT LAMPS.

In such case, where the insulating material upon the cord attached to the lamp had become partially worn off by constant use, but still not sufficient to so impair the lamp as to produce any effect upon the person handling the same, when the current does not exceed one hundred and ten volts: *Held*, that it is error to charge the jury that if they should find, that if the insulation had been perfect that the excessive current would not have killed decedent, then they should find for the defendant.

3. PROOF REQUIRED TO REBUT PRIMA FACIE CASE.

In such case, it is not sufficient to rebut the *prima facie* case for the defendant to simply prove by witnesses that its transformer was apparently in good condition soon after the accident and that its primary and secondary wires showed no evidence of having been in contact.

ERROR to common pleas court of Summit county.

**Musser, Kohler & Mottinger** and **Noble, Pinney & Willard,** for plaintiff in error:

*Prima facie* case made by plaintiff. *Defiance Water Co.* v. *Olinger*, 54 Ohio St. 532 [44 N. E. Rep. 238; 32 L. R. A. 736]; *Iron Ry.* v. *Mowery*, 36 Ohio St. 418 [38 Am. Rep. 597]; *Boyd* v. *Electric Co.* 40 Ore. 126 [66 Pac. Rep. 576; 57 L. R. A. 619]; *Newark Elec. L. & P. Co.* v. *Ruddy*, 62 N. J. Law 505 [41 Atl. Rep. 712; 57 L. R. A. 624].

Duty to control dangerous substances. *Gas Fuel Co.* v. *Andrews*, 50 Ohio St. 695 [35 N. E. Rep. 1059; 29 L. R. A. 337]; *Defiance Water Co.* v. *Olinger*, 54 Ohio St. 532 [44 N. E. Rep. 238; 32 L. R. A. 736]; *Bradford Glycerine Co.* v. *Manufacturing Co.* 60 Ohio St. 560 [54 N. E. Rep.

528; 45 L. R. A. 658; 71 Am. St. Rep. 740]; *Cleveland Term. & Val. Ry.* v. *Marsh,* 63 Ohio St. 236 [58 N. E. Rep. 821; 52 L. R. A. 142]; *Tiffin* v. *McCormack,* 34 Ohio St. 638 [32 Am. Rep. 408]; *Wellington* v. *Oil Co.* 104 Mass. 64.

**Rogers, Rowley, Bradley & Rockwell** and **Squires, Sanders & Dempsey,** for defendant in error.

**COOK, J.**

This case is one of more than ordinary importance and presents some new questions, the solution of which is not entirely free from doubt.

The decedent, D. P. Wheeler, was the cashier of the Citizens National Bank of the city of Akron.

The bank had a contract with the defendant, The Northern Ohio Traction Company, to furnish it with electricity to light its bank with incandescent lamps and for no other purpose. The amount of electricity required for such purpose was 104 volts and should not exceed at furthest more than 110 volts as the incandescent lamp was only calculated to carry that amount of voltage, as the traction company well knew. The bank was the owner of the wires inside the bank and also of the lamps and placed the same in position while the traction company was the owner and had exclusive control of the wires leading up to the wall of the bank where the same connected with the wires of the bank. Upon the alley adjoining the bank the traction company had a pole some thirty-six or forty feet high upon which were three transformers. Into these transformers ran the primary wires of the traction company carrying a current of 1,040 volts and these transformers were intended to reduce the amount of the current to 104 volts which was carried over what is known as seconadry wires to the various business places lighted by the company, and it was these secondary wires that carried the current into the bank.

In this alley were also a large number of telephone and telegraph wires but no other electric light wires but those of the traction company, as it was the only person or company that had traction or light wires in the city of Akron. The bank for many years had had an electric lamp attached to a cord hanging from the ceiling which was used in opening the safe in the vault by throwing the light upon the dial of the safe. On Christmas morning Mr. Wheeler, the decedent, as had been his custom for a number of years, on holidays, went to the bank at about 10 o'clock in the morning for the purpose of opening his mail and seeing that everything was right in the vault. He went to the vault, took hold of the handle of the door with his right hand and the electric lamp

with the other to light him in opening the safe and immediately a current of electricity went through him of sufficient force to kill him. He was found about 2 o'clock in the afternoon dead with his right hand tightly clutching the safe door and his left hand the electric lamp, two of the fingers on his left hand being entirely burned off.

The evidence shows that a current of electricity of 104 volts, will not produce death or serious injury, and further that there were electrical disturbances the night before upon the wires connected with the pole, on which the transformers were placed, and further there were electrical shocks in other business houses, the wires of which were connected with the same transformer as the wires of the bank. From these facts we are convinced that a very high current went through the deceased, certainly more than 500 volts and probably the full current of the primary wires, 1,040 volts, and that this excessive current came from the secondary wires of the traction company leading into the bank, which was generated at its plant.

Under these facts the plaintiff asking the court by special requests to charge the jury as follows:

"7. If you find from the evidence that the defendant furnished to the Citizens' National Bank electricity for pay and it was understood by defendant and the bank and the employes of the bank, including the decedent, that the current so to be furnished was to be of a harmless voltage, and you further find that on this Christmas day the defendant sent or permitted to pass over its wires and into the bank a current dangerous to human life without warning the bank or its employes, you may and should presume the defendant guilty of negligence, and the burden then would be on the defendant to remove that presumption and the plaintiff would not in the first instance be required to show how the dangerous current got on defendant's wires and into the bank.

"8. If you find from the evidence that on this day a dangerous current, one which would kill a man, passed over defendant's wires into the bank building and onto the wires therein and such current killed Mr. Wheeler, the law will presume that the defendant was guilty of negligence and the burden would be on defendant to explain how the current was on the wire and remove that presumption."

The court did not give these requests but gave two requests of defendant directly to the contrary. We think these requests of plaintiff should have been given to the jury and that the refusal and the giving of the request of defendant to the contrary was error on the part of the trial court. It will be observed that the traction company had impliedly at least agreed to furnish a current of electricity of not more

than 104 volts, which was harmless. Contrary to its agreement it had
sent a more excessive current through it, one that was deadly and did
kill the decedent. It had exclusive control over the plant that generated
the electricity and of the wires that carried it into the bank. Whatever
voltage came from its plant and over its secondary wires must of neces-
sity go into the bank.

The bank had no control whatever over these appliances of the
traction company. True the bank had control over its own wires but
that could not affect the case as it in no manner could control the
amount of current that came over the traction company's wires. In-
deed for all practical purposes they were as much under the control of
the traction company as its own wires. If the current was harmless it
was harmless, if deadly it was deadly, and the bank could not control it.
The employes of the bank were under the care and control of the trac-
tion company in this regard.

We think the cases of *Iron Ry.* v. *Mowery*, 36 Ohio St. 418 [38 Am.
Rep. 597] and the *Clev. C. & C. Ry.* v. *Walrath*, 38 Ohio St. 461 [43
Am. Rep. 433], in the facts and the questions decided are very much
like the case before us. In the former it was held:

"On the trial of an action against a railroad company by a pass-
enger, for an injury received through a collision of the trains of the
company, a *prima facie* presumption of negligence arises against the
company."

In the charge, page 419, the court said:

"It being admitted that the defendant is a carrier of passengers,
that, on the occasion mentioned in the petition, the plaintiff was a
passenger on defendant's train, having paid his fare as stated, it was
the duty of defendant to carry him safely to the point of his destination
without injury; and when it is shown that defendant failed to carry
the plaintiff safely to the place of his destination, this failure puts the
defendant, *prima facie*, in the wrong, and the burden of proof de-
volves upon it to show that the injury was the result of a pure acci-
dent, and that it could not have been prevented by the exercise of the
utmost care and skill which prudent men are accustomed to employ
under similar circumstances."

Upon page 422, the court says:

"Whether a presumption of negligence arises, in all cases, against
a railroad company, from the mere fact that an accident has occured
from which a passenger receives an injury while being carried over the
road of the company, is a question not arising in the present case, and
therefore is not determined; but where an injury results to a passenger

Wheeler v. Traction Co.

from a collision of the trains of the company, we have no doubt that a *prima facie* presumption of negligence arises against the company, and that unless the company relieves itself from liability, by showing that the injury did not result from its carelessness, or by showing contributory negligence upon the part of the passenger, judgment should be rendered against it.''

In the latter case the rule laid down in the former is affirmed and enlarged, and it was there held, page 462:

''On proof of injury sustained by a passenger on a railroad train, by the fall of a berth in a sleeping car, and that the passenger was without fault, a presumption arises, in the absence of other proof, that the railroad company is liable.''

The charge, page 462, in that case complained of was:

''The burden of proof is on the plaintiff to show that he was injured by the defendant's negligence, either in not providing safe and suitable cars, or in not properly - inspecting and taking care of said cars. A mere statement that a person was injured while riding on a railway, without any statement of the character, manner, or circumstances of the injury, does not raise a presumption of negligence on the part of the railway company. But if the character, manner, or circumstances of the injury are also stated, such statement may raise on the one hand a presumption of such negligence, or, on the other, a presumption that there was no such negligence. If the plaintiff was in fact injured while sitting in his proper place, by the falling onto his head of the upper berth, while said berth ought to have remained in place above, such fact raises a presumption in the case of negligence, for which the defendant is liable.''

In the case of *Claflin* v. *Myer*, 75 N. Y. 260 [31 Am. Rep. 467], it is held:

''In an action against a warehouseman for refusal to deliver goods entrusted to him, where the refusal is explained by the fact appearing that the goods were lost by a burglary, the burden is upon the plaintiff to establish affirmatively that the burglary was occasioned by, or was not prevented by reason of some negligence or omission of due care on the part of defendant; the court will not assume in the absence of proof that the loss was the result of his negligence.

''The warehouseman in the absence of bad faith is only liable for negligence, and one bringing an action against him for the loss of goods must allege and prove negligence; the burden is never shifted; if plain-

tiff prove demand and refusal to deliver, this, unexplained, is *prima facie* evidence of negligence; but if it appear that the goods have been lost by theft, plaintiff must show that the loss arose from the negligence of defendant.

"Where, therefore, the facts proved are as consistent with due care as with the want of it, plaintiff cannot recover."

On page 262 the learned judge says:

"The cases agree that where a bailee of goods, although liable to their owner for their loss only in case of negligence, fails, nevertheless, upon their being demanded, to deliver them or account for such nondelivery, or, * * * where 'there is a total default in delivering or accounting for the goods,' * * * this is to be treated as *prima facie* evidence of negligence. * * * This rule proceeds either from the assumed necessity of the case, it being presumed that the bailee has exclusive knowledge of the facts and that he is able to give the reason for his nondelivery, if any exist, other than his own act or fault, or from a presumption that he actually retains the goods and by his refusal converts them."

Mark the language, "either from the fact that the plaintiff's evidence is exclusively within his knowledge," or that he has converted the goods to himself. When you make a demand upon the bailee for the goods, and he does not explain why he don't deliver them, the presumption immediately arises that the goods were destroyed by his negligence, or he refuses to deliver them.

In Keasbey, Electric Wires Sec. 271, the doctrine of *res ipsa loquitur* is distinctly laid down as being the generally accepted rule in cases of this character where injury is sustained by defective or overcharged wires, and many cases are cited in support of the text, that where contractual relations exist between the parties, and the plaintiff shows actual negligence or conditions so obviously dangerous as to admit of no other inference, the burden thus thrown on the defendant is not that of satisfactorily accounting for the accident, but of showing that it used due care. *Stearns* v. *Spinning Co.* 184 Pa. St. 519 [39 Atl. Rep. 292; 39 L. R. A. 482; 63 Am. St. Rep. 807]; *O'Neal* v. *O'Connel,* 167 Mass. 388 [45 N. E. Rep. 758]; *Harbison* v. *Railway,* 9 App. D. C. 60; *Burdon Cent. Sug. Refin. Co.* v. *Sugar Mfg. Co.* 78 Fed. Rep. 417, 422; *Anderson Lumber Co.* v. *Insurance Co.* 79 Fed. Rep. 125; *Donnelly* v. *Booth Bros.* 90 Me. 110 [37 Atl. Rep. 874]; 56 Alb. L. J. 96; *Steiner* v. *Presbyterian Church,* 17 App.

Div. 500, 502 [45 N. Y. Supp. 524]; *Magee v. Brooklyn*, 18 App. Div. 22 [45 N. Y. Supp. 473]; *McCray v. Railway*, 89 Tex. 168, 169 [34 S. W. Rep. 95]; *Uggla v. Railway*, 160 Mass. 351 [35 N. E. Rep. 1126; 39 Am. St. Rep. 481]; *Clarke v. Railway*, 9 App. Div. 51 [41 N. Y. Supp. 78; 6 Am. Elec. Cas. 234]; *Trenton Pass. Ry. v. Cooper*, 60 N. J. Law 219 [37 Atl. Rep. 730; 38 L. R. A. 637; 64 Am. St. Rep. 592]; *Suburban Electric Co. v. Nugent*, 58 N. J. Law 658 [34 Atl. Rep. 1069; 32 L. R. A. 700; 6 Am. Elec. Cas. 238]; *Excelsior Electric Co. v. Sweet*, 57 N. J. Law 224 [30 Atl. Rep. 553]; *Newark Elec. L. & P. Co. v. Ruddy*, 62 N. J. Law 505 [41 Atl. Rep. 712; 57 L. R. A. 624]; *Bridges v. Railway*, L. R., 6 Q. B. 377, 391; *Larson v. Railway*, 56 Ill. App. 263; *Snyder v. Electrical Co.* 43 W. Va. 661 [28 S. E. Rep. 733; 39 L. R. A. 499; 64 Am. St. Rep. 922]; *Kepner v. Traction Co.* 183 Pa. St. 24 [38 Atl. Rep. 416]; *Western Union Tel. Co. v. State*, 82 Md. 293 [33 Atl. Rep. 763; 31 L. R. A. 572; 51 Am. St. Rep. 464; 66 Am. Elec. Cas. 210]; *Haynes v. Gas Co.* 114 N. C. 203 [19 S. E. Rep. 344; 26 L. R. A. 810; 41 Am. St. Rep. 786; 5 Am. Elec. Cas. 264]; *Seybolt v. Railway*, 95 N. Y. 562 [47 Am. Rep. 75; *Denver Tramway Co. v. Reid*, 4 Colo. App. 53 [35 Pac. Rep. 269; 4 Am. Elec. Cas. 332].

We must not be understood as holding that the burden of proof is upon the defendant. Negligence is never presumed; but what we do hold is, that in a case of this character where a contractual relation subsists evidence that this extreme current of electricity passing through the secondary wires of the traction company made a *prima facie* case of negligence which was its duty to explain and rebut. The distinction is made clear in the case of *McDonald v. Miser*, 25 O. C. C. 753.

Two other instructions requested by the traction company were given by the court numbers 18 and 22 which should not have been given.

18. "If you find that the electric light appliances in the building in which the decedent met his death, were not owned or under the control of the defendant company, and that the same were defective, and that but for such defects the escaping of the primary current into the secondary wires leading into said building, if you find the same so escaped, would not have caused the death of defendant, the defendant company would not be liable."

22. "If you find that at the time of the accident complained of in plaintiff's petition, the defendant company had no control of the wires, lamps, sockets and other electrical appliances in the building of the Citizens' National Bank Company, and you further find that said ap-

pliances were defective and that said injury would not have occurred except for said defective wires and electrical appliances within the building of the Citizens' National Bank Company, then I say to you that the defendant company would not be liable in this case although the facts may show that an excessive current of electricity was upon the secondary wires at the time of the death of decedent.''

There was evidence tending to show that the incandescent lamp which the decedent had taken hold of was not perfect for the reason that by constant use part of the insulating material which covered the wire had been worn off and that if it had been of a certain character of lamp or the same kind with perfect insulation it probably would have taken care of 1,040 volts: the glass bulb might have been broken but the shell would not have been affected.

The obligation of the bank was to take care of not exceeding 110 volts, not 1,040 volts. That was all it was required to do. This lamp had been performing that duty for a long time without any preceptible effect upon persons handling it and the bank had no right to expect that a current ten times as strong and of sufficient power to produce death would be sent into that lamp; but on the contrary it had a right to assume that the traction company would perform its duty and not do such a wanton and negligent act. *Cincinnati St. Ry.* v. *Snell,* 54 Ohio St. 197 [43 N. E. Rep. 207; 32 L. R. A. 276].

There was another question that was made specially prominent in the charge to the jury, and in the requests of defendant given by the court, and that is the claim of contributory negligence upon the part of the deceased.

We see no place for contributory negligence in this case and it was the duty of the court below instead of emphasizing that question, to have entirely eliminated it. Certainly it could not be claimed that Mr. Wheeler was not in the exercise of due care by taking hold of the incandescent lamp. He had done that day by day for years without any preceptible shock. It is true that the night previous when the porter turned the key to one of the lights in a back room there was a flash and the light went out in that room, and that Mr. Wheeler was aware of that fact and remarked that the wires in that room must be looked after but the lights in the front room, where the one that caused his death was, were in no manner affected or gave any evidence of any derangement. Why then should Mr. Wheeler be charged with negligence. Should a consumer be required upon every casual disturbance of a lamp to secure

Wheeler v. Traction Co.

an electrician and have all the lamps in the building examined; and if he had procured such an electrician he could only have reported that while the insulation upon this particular lamp was somewhat worn yet it was all right for the purpose it was intended. We think the court should have told the jury that there was no evidence of contributory negligence in the case and that they should not consider it at all and in not doing so there was error.

This brings us to the only remaining question and that is, Was the verdict of the jury supported by sufficient evidence?

We have seen that the fact that the extreme amount of electricity that went over the secondary wires of the traction company which took the life of the decedent made a *prima facie* case of negligence on the part of the company and that it was necessary for it to explain and rebut this presumption of negligence. Did it do it in a sufficient manner to justify the verdict of the jury? We do not think so. Practically all it did was to show that it did not know how the accident occurred. The increased current came from its plant; it sent it through the secondary wires. At best what did it show? That soon after the occurrence some experts not of very large experience or great ability visited the scene and that they could discover nothing wrong with the transformers or any evidence of contact between the primary and secondary wires and two years afterwards more competent experts testified that the transformer then in court was all right; but in the meantime this transformer had been in use at several different places stored in the jail and otherwise subject to control by anyone desiring to do so. The evidence further discloses that the first one that examined the transformer and wires which was immediately after the discovery of decedent was an employe of the traction company, whose evidence plaintiff in good faith attempted to procure but after great diligence was unable to do so. The fact still remains that the excessive current went through its secondary wires and as we view the evidence from its plant.

As we have seen wires leading from the same transformers produced the same effect not so disastrous in another business house. Electrical disturbances were also seen around the pole on which the transformer was placed and either in it or close to it. The claim that other wires might have crossed outside of the city of Akron running from other electric plants, and through telegraph and telephone wires, in the alley communicated with the secondary wires of the traction company has no support in the evidence. Why then was the current from the primary wires communicated directly to the secondary wires? The company says it does not know; but it should know, and the jury should have

Summit County.

been put in possession of the facts in order that it might say whether or not the *prima facie* case had been met. It is not sufficient for the officers and employes of the company to say they do not know. That is what was claimed in the cases of *Railway* v. *Mowery* and *Railway* v. *Walrath, supra,* but it was not sufficient.

Indeed it seems to us that taking the evidence altogether it pretty clearly appears that the transformer was defective or the primary and secondary wires which were close together upon this high pole which was liable to swerve became crossed or they came in such close contact as to conduct or produce in the secondary wires the extreme amount of electricity complained of, and that the company did not rebut the *prima facie* case made by plaintiff below.

The judgment of the court of common pleas will be reversed for the reason of the refusal of the court to give requests 2, 7, 8, 10, 11, 17 and 22 requested by plaintiff and in giving requests 2, 4, 17, 18 and 22 requested by defendant; also for error of the court in the charge upon the question of contributory negligence; also that the verdict is contrary to the evidence, and the case is remanded for a new trial.

**Marvin** and **Winch JJ.,** concur.